```
          IN THE UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

```
DEMETRIOS KARAMANOS,          :
                              :   HONORABLE JOSEPH E. IRENAS
        Petitioner,           :
                              :   CIVIL ACTION NO. 04-171 (JEI)
    v.                        :
                              :
UNITED STATES OF AMERICA,     :            OPINION
                              :
        Respondent.           :
```

**APPEARANCES:**

DEMETRIOS KARAMANOS, Petitioner *pro se*
# 19992-009
F.C.I. Fort Dix
P.O. Box 7000
Fort Dix, New Jersey 08640

CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
By: Stephen Ponticiello, Esq.
Thomas P. Ott, Esq.
970 Broad Street, Suite 700
Newark, New Jersey 07102
     Counsel for Respondent

**IRENAS**, Senior District Judge:

Presently before the Court is Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. Petitioner maintains that he was denied his Sixth Amendment right to effective assistance of counsel in violation of *Strickland v. Washington*, 466 U.S. 668 (1984). For the reasons set forth below, the Petitioner's application will be denied.

1

I.

Petitioner Demetrios Karamanos was convicted on June 19, 1998, after a nine and a half month trial, of one count of conspiracy to defraud the United States, commit tax evasion, wire fraud and money laundering in violation of 18 U.S.C. § 371; eleven counts of excise tax evasion in violation of 26 U.S.C. § 7201; five counts of wire fraud in violation of 18 U.S.C. § 1343; and two counts of money laundering in violation of 18 U.S.C. § 1957.[1]  On March 16, 1999, Petitioner was sentenced to 135 months of incarceration and levied a $950 special assessment.

The voluminous evidence presented against Petitioner at trial established that he and his co-conspirators took part in a "daisy chain" scheme to evade over $132,000,000 in federal excise taxes on the sale of motor fuels.  Petitioner was a corporate officer of Kings Motor Oils, Inc., a wholesale distributor of home heating oil and motor fuels.  Petitioner and his co-conspirators took advantage of the tax-paid fuels market, in which wholesale fuel distributors holding valid Internal Revenue Service Registrations for Tax-Free Transactions ("Form 637") are permitted to make tax-free sales and purchases from other Form 637 holders.  The last wholesaler in the distribution chain with a Form 637 was responsible for the payment of the excise tax.  The cost of the tax was usually passed on to the companies that

---

[1]Petitioner was acquitted of seventeen of the counts against him.

2

were the final buyers of the fuel.[2]

Petitioner and his co-conspirators set up a series of false middlemen and sham transactions to make it appear that Kings, a Form 637 holder, was selling tax-free fuel to other Form 637 holders.  In reality, Kings was selling fuel directly to PetroPlus, a small distributor of motor fuels run by co-defendant Daniel Enright, without the taxes being paid by either company. Kings made paper sales, without taxes being paid, to middle companies, some of which were legitimate business with valid Form 637s and some were little more than an address, fax and phone number.  These false transactions often went through several layers of middle companies in order to obscure which company was responsible for payment of the excise taxes.  One shell company was always positioned between Kings and PetroPlus as the "burn" company, and any sales before it in the chain were invoiced as tax-unpaid, whereas any sales after it (i.e. to PetroPlus) were invoiced as tax-paid.  As a result, Kings and PetroPlus were always several degrees removed from the sale that on paper triggered the obligation to pay taxes.

Petitioner and his co-conspirators concealed this scheme through elaborate measures.  Kings and PetroPlus communicated using cellular phones purchased and activated in the names of other companies.  False invoices reflected sales of tax-exempt

---

[2]Changes to New Jersey law have since eliminated the tax-paid fuels market.

3

home heating oil until the sales passed through the "burn" company, after which they indicated sales of tax-paid motor fuel. Payments for the fuel were sometimes made through third parties, and sham companies outside the daisy chain were set up to be the conduits for those payments. The conspirators filled out the chain between Kings and PetroPlus with sham satellite offices of legitimate retail fuel suppliers as well as at least eight shell companies holding an invalid or stolen Form 637.

Petitioner was indicted on August 3, 1995, by a grand jury in the District of New Jersey, for his involvement in this "daisy chain" scheme. On June 10, 1996, Morris W. Pinsky, Esq. ("Pinsky"), and Tracy A. Cogan, Esq. ("Cogan"), were appointed to represent Petitioner. At sentencing, Petitioner was also represented by Merrill Rubin, Esq. ("Rubin"), private counsel retained by Petitioner to replace Cogan.

The Third Circuit affirmed Petitioner's conviction and sentence on April 16, 2002. *United States v. Karamanos*, 38 Fed. Appx. 727 (3d Cir. 2002). Specifically, the Circuit rejected his arguments that there was insufficient evidence to find him guilty of money laundering and upheld this Court's sentencing determination. *Id.* at 730-31.

The Supreme Court denied certiorari on January 13, 2003. *Karamanos v. United States*, 537 U.S. 1104 (2003)(mem.). Petitioner filed this Section 2255 petition on January 13, 2004.

4

**II.**

Section 2255 provides, in pertinent part, that:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2000).  Thus, Petitioner is entitled to relief only if he can establish that he is in custody in violation of federal law or the Constitution.

A district court is given discretion in determining whether to hold an evidentiary hearing on a habeas petition under Section 2255.  *See Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir. 1989).  In exercising that discretion, the court must first determine whether the petitioner's claims, if proven, would entitle him to relief, and then consider whether an evidentiary hearing is needed to determine the truth of the allegations.  *See Government of the Virgin Islands v. Weatherwax,* 20 F.3d 572, 574 (3d Cir. 1994).  Accordingly, a district court may summarily dismiss a motion brought under Section 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'"  *United States v. Nahodil,* 36 F.3d 323, 326 (3d Cir. 1994) (quoting *United States v. Day,* 969 F.2d 39, 41-42 (3d Cir. 1992)); *Forte,*

5

865 F.2d at 62.

Petitioner asserts that he was provided ineffective assistance of counsel in violation of his Sixth Amendment rights. He maintains that his counsel failed to: (1) interview or call potential defense witnesses; (2) advise Petitioner of his right to testify on his own behalf; (3) present any defense case; and (4) prepare for or understand the sentencing proceeding. Petitioner contends that he was prejudiced by these failures because significant evidence of his innocence was not presented to the jury and his sentence was selected using a base offense level that was too high for the crimes of which he was convicted.

For the reasons outlined below, the Court finds that the evidence in the record conclusively demonstrates that Petitioner is not entitled to the relief sought.  Accordingly, Petitioner's application will be denied without an evidentiary hearing.

**III.**

The Supreme Court has long recognized that the Sixth Amendment right to counsel exists in order to protect a defendant's fundamental right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984).  This right to counsel includes within it the right to *effective assistance* of counsel. *Id.* at 686; *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In *Strickland*, the Court held that "[t]he benchmark for judging

any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.  *See also Rompilla v. Horn*, 355 F.3d 233, 246 (3d Cir. 2004).

A convicted defendant seeking to have his conviction or sentence vacated due to the incompetence of counsel must show that his counsel's performance was deficient and that he was prejudiced by the deficiency. *Strickland*, 466 U.S. at 687.  The first prong of this test requires a habeas petitioner to demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," such that counsel's representation fell below an objective standard of reasonableness.  *Id.*  Second, the petitioner must show that but for counsel's errors, there is a reasonable probability that the result of the trial would have been different.  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

A court reviewing a habeas petitioner's claim of ineffective assistance of counsel need not determine whether counsel's performance fell below an objective standard of reasonableness before addressing whether the defendant was prejudiced by counsel's errors. *Strickland*, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

7

sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* As such, the Court will first address whether Petitioner was prejudiced by his counsel's alleged ineffective representation.

### A.

Petitioner alleges that his counsel provided ineffective assistance because he did not locate, interview, and solicit testimony from "character, alibi, and material witness[es]." (Pet. Br. at 5.) Petitioner provides a list of nineteen allegedly "credible witnesses that were readily available and willing to provide critical evidence to the Court..." (*Id.* at 6-15.) He has provided affidavits of sworn facts, however, for only two of the nineteen people on the list, Chris Arvidson ("Arvidson") and George Xynis ("Xynis").

Arvidson, an operations employee at Kings from May, 1989, until February, 1994, stated in his affidavit that he would have testified regarding his knowledge of Petitioner's legitimate business dealings. A review of Arvidson's affidavit suggests that he possessed a significant amount of information pertaining to Petitioner's legitimate business ventures.[3] The voluminous

---

[3] For example, Arvidson's affidavit indicates that he was able to testify concerning (1) that his office's tumultuous business relationship with Kings controller Shirley Dzyak due to her alcoholism; (2) the "distrust and resentment" displayed by Igor Erlikh and Aron Misulovin towards Petitioner; (3) Misulovin's misappropriation of funds which precipitated Petitioner's decision to move the office of the Kings shipping business away from the main Kings office in order to disassociate from Erlikh and Misulovin; and (4) how

evidence presented at trial indicated that in addition to his legitimate ventures, however, Petitioner conducted business on another separate and wholly illegal level.  It appears that Petitioner deliberately chose not to apprise Arvidson of the illegal daisy chain.

Petitioner also contends that Arvidson could have "offer[ed] substantial evidence to refute testimony provided by government witnesses. . ."  (Pet. Br. at 7.), although Petitioner never specifically identifies the evidence Arvidson could have refuted. None of the facts or events in Arvidson's affidavit are incompatible with Petitioner's desire and or ability to commit the crimes of which he was convicted.  Petitioner's vague, conclusory allegations fail to show that if Arvidson's testimony had been presented to the jury, there is a reasonable probability that the result of the proceeding would have been different.

The testimony of Xynis, chief engineer of the Kings shipping business from June, 1990, until April, 1993, would have been equally unhelpful.  Xynis' affidavit indicates that he would have testified to a partial alibi defense.[4]  The Court fails to see how an alibi defense would have had any relevance to Petitioner's

---

he "was witness to the fact that no single individual that conducted business with the KMO Inc. office had ever at any time entered our office at KMO S.A./Kings Shipping Corp., or had participated in any business dealings with us," including the Russian-speaking individuals who regularly met at the Kings office.  (Arvidson Aff. at ¶¶ 23-26, 43.)

[4]For example, Xynis stated that "it would have been simply impossible for Mr. Karamanos to be involved in any other business than the enormously time consuming endeavors and efforts we were involved in."  (Xynis Aff. at p. 2.)

9

case.

Once established, the daisy chain scheme did not require an inordinate amount of maintenance. Given Petitioner's considerable business savvy in the shipping and petroleum industries, it is entirely conceivable that he could have found time to manage the scheme while remaining involved in legitimate overseas business ventures. Counsel's decision not to solicit testimony from Xynis to support a meritless alibi defense was neither unreasonable nor prejudicial. There is no Sixth Amendment deprivation of effective assistance of counsel based on an attorney's failure to raise a meritless argument. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

Petitioner cannot demonstrate that he was prejudiced by counsel's failure to call as witnesses the other seventeen individuals on the list. Prejudice cannot be based on mere speculation as to what witnesses might have said. *Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001); *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989). Thus, the Court cannot conclude that Petitioner was prejudiced by counsel's failure to investigate or call these individuals as witnesses because Petitioner has failed to provide a sworn statement of facts from any of the seventeen detailing their proposed testimony.

**B.**

Petitioner maintains that he received ineffective assistance of counsel because Pinsky failed to "fully discuss" with the Defendant his right to testify at trial. (Pet. Br. at 18.) Petitioner's briefs clearly indicate that he did discuss his right to testify with Pinsky. He contends, however, that counsel "coerced [him] to not provide testimony on his behalf on the grounds that defense counsel considered it unnecessary and that the [P]etitioner should 'trust his judgment and experience' on the matter." (Pet. Br. at 22.)

Petitioner claims that he was "precluded from taking the stand and explaining [his] own version of the story as a result of no [sic] defense witness testimony laying the foundation of the facts, and Mr. Pinsky's insistence that I not add testimony because I should rely on his judgment and experience that it was not necessary." (Pet. Aff. at ¶ 96.) The Court notes that a defendant's constitutional right to testify on his own behalf, derived from the Sixth and Fourteenth Amendments, is not contingent upon defense counsel having laid a foundation of facts. *Rock v. Arkansas*, 483 U.S. 44, 51-52 (1987).

Petitioner cannot show that counsel was unreasonable simply by vaguely characterizing Pinksy's advice against testifying as "coerc[ion]." *See Frederick v. Kyler*, 100 Fed. Appx. 872, 874 (3d Cir. 2004)(finding that if trial counsel "merely advised [the petitioner] not to testify, that tactical decision certainly

would not have fallen below Strickland's standard of objective reasonableness"). As did the unsuccessful petitioner in *Frederick*, Petitioner offers no evidence to support his claim in coercion. *See id.* at 874-75. There is nothing in the trial record to indicate that Pinsky did anything more than advise Petitioner against testifying or that he told Pinsky he disagreed with his advice. *See id.*

Even accepting Petitioner's allegation that he was prevented from testifying, Petitioner has not demonstrated that he was prejudiced by Pinksy's error. Petitioner has not set forth the details of his proposed testimony, nor has he explained how his testimony could have refuted the wealth of evidence presented against him by the prosecution. *See United States v. Aikens*, 358 F. Supp. 2d 433, 436-37 (E.D. Pa. 2005) ("Petitioner's assertion that his testimony would have contradicted the testimony of the cooperating witnesses is insufficient to satisfy *Strickland's* prejudice element."). Petitioner's bare statements fail to demonstrate that if he had testified, there is a reasonable probability that the result of the proceedings would have been different.

### c.

Petitioner's claim that his counsel failed to present any defense is equally unpersuasive. Petitioner's complaint is not

that no defense was presented at all, nor could it be, given his counsel's active participation in the trial on his behalf and the fact that he was acquitted of seventeen of the charges against him.  Rather, Petitioner argues that his counsel did not follow his instructions or present the evidence that Petitioner wanted on the record.  The Sixth Amendment does not guarantee that a defendant will get the best possible defense or the exact defense he wanted.  As *Strickland* established, a defendant is entitled to objectively reasonable representation in order to ensure that he receives a fair trial.  *Strickland,* 466 U.S. at 688, 696.

In assessing an allegation of ineffective assistance of counsel, "the court is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel. . . . the mere existence of alternative – even preferable or more effective – strategies does not satisfy the requirements of demonstrating ineffectiveness under *Strickland*."  *Marshall v. Hendricks*, 307 F.3d 36, 85-86 (3d Cir. 2002).

Petitioner contends that Pinsky refused to "pursue clear defensive strategies during the course of trial as well as challenge government witness testimony."  (Pet. Br. at 18.)  Petitioner does not explain the defenses he thought his counsel should have pursued or detail the "abundantly available evidence" that could have been used to discredit the government's

13

witnesses. (Pet. Br. at 20.) Even assuming Petitioner's allegations to be true, Petitioner cannot demonstrate that he was prejudiced by his counsel's actions.

Petitioner makes repeated reference to an alleged alibi defense, claiming his absence from this country at various times precluded his participation in the daisy chain scheme. Given the overwhelming evidence establishing Petitioner's major role in the conspiracy, it is impossible for the Court to conclude that there is a reasonable probability that the outcome of the trial would have been any different if an alibi defense was presented.

The government submitted handwritten notes by Petitioner outlining the operation and day-to-day management of the daisy chains, false documents from one of the middle companies seized from Petitioner's residence and records of payments to Petitioner related to the scheme. At least seven witnesses provided corroborating testimony of Petitioner's central role in directing the scheme. As noted before, counsel cannot be deemed ineffective for failing to present a meritless defense. *Sanders*, 165 F.3d at 253.

Petitioner argues that he had "an actual conflict of interest" because his counsel refused to follow specific instructions regarding the conduct of his defense, and due to the perceived hostility of his counsel. (Pet. Br. at 19-20.) Because Petitioner raised no objection at trial, he bears the burden of demonstrating that "an actual conflict of interest

14

adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 445 U.S. 335, 348 (1980). If Petitioner can show that "counsel 'actively represented conflicting interests'" the Court will presume prejudice exists. *Strickland*, 466 U.S. at 692 (quoting *Cuyler*, 445 U.S. at 350).

To prove that an actual conflict of interest exists a petitioner must show that (1) "a specific and seemingly valid or genuine alternative strategy or tactic was available to defense counsel;" and (2) the alternative strategy or tactic was not chosen because it was "inherently in conflict with counsel's duties to others or to his own personal interests." *United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir. 1990); *see also United States v. Kole*, 164 F.3d 164, 175 (3d Cir. 1998)(holding that a "defendant 'must identify something that counsel chose to do or not do, as to which he had conflicting duties, and must show that the course taken was influenced by that conflict'").

Petitioner maintains that "[t]he continuous and persistent disputes between the petitioner and his appointed counsels, pertaining to facets of conflicting interests due to counsel's unreasonable strategic decisions, was quite clear throughout the trial and was reiterated during sentencing." (Pet. Br. at 19.) As discussed above, Petitioner has not pointed to any "specific and seemingly valid" defenses that his counsel could have pursued. *Bowie*, 892 F.2d at 1500.

15

Moreover, disputes regarding the choice of defense strategy, while unfortunate, are not conflicts of interest. *Contrast Cuyler*, 445 U.S. at 348-50 (discussing conflicts of interest arising from counsel's concurrent representation of multiple co-defendants); *United States v. Sanders*, 61 Fed. Appx. 372, 373 (9th Cir. 2003)(conflict of interest arising from payment of defense counsel's fee by unknown third party); *Winkler v. Keane*, 7 F.3d 304, 307-8 (2d Cir. 1993)(conflict created where counsel represented criminal defendant under contingent fee arrangement).

### D.

Petitioner maintains that his counsel "did not have an adequate understanding of the sentencing guidelines," and as a result, too large an amount of tax loss was attributed to him individually. (Pet. Br. at 22.) The Third Circuit rejected Petitioner's argument that too much tax loss had been attributed to him for sentencing purposes. *United States v. Karamanos*, 38 Fed. Appx. 727, 731 (3d Cir. 2002). Given that Petitioner now argues that his counsel was ineffective for failing to raise that rejected argument, his claim must fail.[5] *See Sanders*, 165 F.3d at 253.

The Court notes that it sentenced Petitioner to a term of

---

[5] The Court notes that Rubin, whom Petitioner hired to replace Cogan during the sentencing process, also represented Petitioner on appeal to the Third Circuit.

16

imprisonment that fell at the low end of the applicable guideline range. The Third Circuit upheld this sentence, including the two-level upward adjustment for the use of "sophisticated means" and the three-level upward adjustment for his role as a "manager or supervisor" of the scheme. *Id.* at 730.

**IV.**

For the reasons set forth above, this Court will deny Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. The Court will issue an appropriate order.

Date:  10/24/05

s/*Joseph E. Irenas*
JOSEPH E. IRENAS, S.U.S.D.J.